## JOHN W. CARTWRIGHT'S CASE.

Upon an information for malfeasance in office fil'ed against a receiver of an insolvent insurance company appointed by this court under Gen. Sts. c. 58, § 6, it appeared that he had taken more than $10,000 of the company's funds without order of court and had appropriated them to his own use; that no entry of the taking had been made upon the receivers' books till after the filing of the information; that he had taken $25,000 in bonds belonging to the company and not returned them till the abstraction had been discovered. He was ordered to restore to his co-receiver the money so taken. He failed to comply with this order, and, in answer to an order to show cause why he should not be attached for contempt, testified under oath, admitting the facts, stating that he thought he had a right to take the money as compensation for his services; that he intended to do no wrong, but from poverty he was unable to restore it. Having been adjudged guilty of contempt and sentenced to imprisonment, he appealed. On the appeal, *Held*, (without passing upon the question of the right to appeal,) that the court had the summary power to commit for contempt; that proceedings for contempt were criminal in their nature; that the jurisdiction was not controlled by the question whether the contempt was or was not indictable; that the receiver was an officer of the court, and that his custody of funds was the custody of the court; that his sworn testimony was not conclusive in his favor; hat the question of contempt did not depend upon his intention; that he had not cleared himself by his testimony; that he had been guilty of a breach of trust and of a contempt; that the commitment was not alone to compel restitution, but to punish for the offence, and that therefore his inability to make restitution was not a sufficient answer.

CONTEMPT. An application under Gen. Sts. c. 58, § 6, had been made to this court by the insurance commissioner against the Hide and Leather Insurance Company, representing that upon an examination had by him, he was of opinion that it was

insolvent, and praying that an injunction might issue restraining it from proceeding with its business, and asking for the appointment of receivers. The injunction had issued, and December 2, 1871, Chester I. Reed, John W. Cartwright and Oliver H. Cole had been appointed receivers by a decree, a copy of which is in the margin.*

Afterwards, Chester I. Reed had died, and James C. Davis had been then appointed one of the receivers.

November 28, 1873, the Attorney General signed and filed in the case the following information: "And now the Attorney

---

* This cause came on to be further heard this term before said court, and the parties appeared and their proofs and arguments were heard; whereupon, it appearing that said respondent corporation is insolvent, and that its further proceeding would be hazardous to the public, on consideration thereof it is ordered, adjudged and decreed as follows: namely, that the injunction heretofore issued in said cause be and the same is hereby made perpetual; that Chester I. Reed, John W. Cartwright and Oliver H. Cole be and they are hereby appointed receivers, with authority to take possession of the property and effects of said corporation and take charge thereof; to collect the debts due to said corporation; to pay all debts due from said corporation, if the funds coming to their hands are sufficient therefor; and if not, to distribute said funds ratably among the creditors of said corporation who duly prove their claims; and if there is any balance left in their hands after paying the debts as aforesaid, to pay and distribute the same to and among the persons legally entitled thereto ; all under the further directions of this court. And to these ends the said receivers shall have power to prosecute and defend suits in their own names or in the name of said corporation, and to do all other acts which might be done by said corporation if in being, for the purpose of settling any unfinished business thereof. And the said corporation and its officers, servants and agents are hereby commanded forthwith to deliver to said receivers all assets, funds, securities, evidences of property, and all property of any kind or nature belonging to said corporation. It is further adjudged and decreed that said corporation, except for the purposes hereinbefore stated, be and the same is hereby dissolved. It is further ordered and decreed that each of said receivers shall give a bond to the Commonwealth, with sureties satisfactory to the clerk of this court, and approved by him, in the sum of fifteen thousand dollars. And it is further ordered, that said cause shall be retained for further directions.

By the order of JOHN WELLS, Esq., one of the justices of said court.

George C. Wilde, Clerk.

December 2, 1871.

General informs the court that John W. Cartwright, one of the receivers heretofore appointed in said cause, has been guilty of gross negligence and malfeasance in the duties of his said office; wherefore the Attorney General moves that said Cartwright be removed from his said office, and for such other decree in re- lation thereto as the nature of the case may require.

"Charles R. Train, Attorney General."

Upon this information, such proceedings were had that Cart- wright was adjudged to be in contempt, and was sentenced to be imprisoned for the term of six months. From this adjudication and sentence he appealed to the full court, and the case was re- ported by *Devens*, J., as follows:

. "An information having been filed by the Attorney General in this cause November 28 last, alleging that the said Cartwright had been guilty of gross negligence and malfeasance in the duties of his office as one of the receivers of the said company, it was thereupon on the same day ordered by Mr. Justice Ames, at chambers, that the said Cartwright be notified to appear before some one of the justices of this court, at the court-house in Bos- ton, on the sixth day of December last; and on the thirteenth day of said December the said Cartwright appeared before me, at chambers at the said court-house, by counsel, and was fully heard by me in the matter of the said information, and the At- torney General was present and was heard thereon. At this hearing it appeared and was not denied by said Cartwright, that he had appropriated specifically $25,000 in bonds of the United States belonging to this company, without the knowledge of either of his co-receivers, and that after discovery by the Attorney Gen- eral of this appropriation of them, and demand upon him, they were restored; this was done before Davis was appointed re- ceiver. And it further appeared that said Cartwright was indebted to the receivers of the said company in the sum of $13,565.97, for cash loaned to him by said company, and cash withdrawn by him for his personal use from the assets in the hands of the said receivers, and for interest thereon; and it was thereupon on the same day ordered and decreed by me that the said Cartwright pay into the hands of James C. Davis, one of

the receivers of the said company, to be administered as a part of the assets of the said company, the said sum of $13,565.97, on or before the seventeenth day of said December, together with interest on the principal of said indebtedness from the date of said order. And on the eighteenth day of said December a statement and affidavit of the said James C. Davis [a copy of which is given in the margin *] was filed in this cause, wherein it was stated that said Cartwright had failed and neglected to comply with said order of December 13th, and had not paid to the said

* Respectfully represents to the Justices of the Supreme Judicial Court James C. Davis, who has been heretofore appointed one of the receivers of the Hide & Leather Insurance Company, that John W. Cartwright, one of the receivers of said company, has failed and neglected to comply with the order of this court made on the thirteenth day of December current, whereby he was directed to pay into the hands of the said James C. Davis, receiver as aforesaid, on or before Wednesday the seventeenth day of December current, the sum of thirteen thousand five hundred and sixty-five $\frac{97}{100}$ dollars, to be administered as a part of the assets of the said company, and that the said Cartwright has not paid to him any part of the said sum.

And the said James C. Davis further represents unto your honors that the account which was annexed to the said order of December 13th was prepared by him from the books of the receivers of the said company, and that it is 'ust and true; that of the amount appearing to be due from said Cartwright o said receivers by said account, being $13,565.97 in all, the sum of thirteen ι undred and forty-two $\frac{53}{100}$ dollars ($1342.53) was charged for interest, at the rate of six per cent. per annum, upon the indebtedness of said Cartwright to said receivers; and the sum of sixteen hundred and fifty dollars ($1650), for money loaned to said Cartwright by said Hide & Leather Insurance Company before the appointment of the said receivers, which has never been paid to the said receivers; and that the remaining sums charged in said account, amounting to ten thousand five hundred and seventy-three $\frac{44}{100}$ dollars ($10,573.44) are sums of money which were withdrawn by the said Cartwright from the assets of the said company, in the hands of receivers thereof, from time to time at the dates and in the amounts shown by said account, and appropriated by him to his own personal use, as the said James C. Davis is informed and believes; and that such withdrawal and appropriation has not been at any time directed or authorized by any order of this court.

James C. Davis, Receiver.

Suffolk, ss.                                             December 18, 1873

Subscribed and sworn to before me,

James G. Freeman, Justice of the Peace

Davis any part of the said sum ; and it was alleged in said affi-davit that a part of the indebtedness of the said Cartwright to the said receivers was for sums of money which were withdrawn by the said Cartwright from the assets of the said company in the hands of the receivers thereof, and appropriated by him to his own personal use ; and thereupon, on the same day, at chambers in said Boston, it was ordered by me that the said Cartwright be notified to appear before some one of the justices of this court at the said court-house on the twentieth day of said December, to show cause why an attachment should not issue against him as and for a contempt of this court, as well for the disobedience of the said order as for an unlawful appropriation of the assets of the said company to his own use [a copy of this order is given in the margin *] ; and notice of the said last mentioned order was on the same day duly served upon the said Cartwright ; and in pursuance of said order the said Cartwright personally appeared before me at said court-house on said twentieth day of December, and the matter was then postponed to the twenty-third day of said December ; and on said last mentioned day the said Cart-wright appeared before the court in session, and was then and there examined on oath, at his own request, and fully heard by counsel.

* And now, it appearing to the court here, upon the statement of James C. Davis, one of the receivers of the said company, that John W. Cartwright, one of the receivers of the said company, has failed and neglected to obey and comply with the order of this court passed in said cause on the thirteenth day of December current, and also that the said Cartwright has appropriated to his own use, without the direction of this court, and without authority of law, a portion of the assets of the said Hide & Leather Insurance Company, it is ordered that the said Cartwright be notified, by the service upon him of an attested copy of this order, to be and appear before some one of the jus-tices of this court, at the court-house in Boston, on Saturday, the twentieth day of December current, at nine o'clock in the forenoon, then and there to show cause, if any he has, why an attachment should not issue against him, the said John W. Cartwright, as and for a contempt of this court, as well for the disobedience of the said order as for an unlawful appropriation of the assets of the said Hide & Leather Insurance Company to his own use.

Charles Devens, Jr., J. S. J. C.

" The books of said receivers were produced at said hearing, and it appeared from said books that the indebtedness of said Cartwright to said receivers was, on December 13th last, $13,565.97, of which amount $1342.53 was for interest; $1650 for indebtedness to said company incurred before the appointment of receivers, and $10,573.44 for cash withdrawn from the company's assets in the hands of the receivers. Of the amount last stated, it appeared that sums amounting to $8840 were withdrawn by said Cartwright from the hands of the said receivers during the month of his appointment (December, 1871) and the two following months (January and February, 1872) and appropriated by him to his own use, and that the residue of said sum of $10,573.44 had been so withdrawn and appropriated by him at various times from said date to the twenty-second day of August, 1872 ; and that no part of his indebtedness had been paid to the said receivers. It appeared that the sum of $7450, which was so withdrawn and appropriated by him on the thirteenth day of January, 1872, was not entered on the books of the receivers at the date of such withdrawal, and was not so entered until December 1, 1873. But said Cartwright stated in his examination that he was ignorant that it had not been duly entered. Said Cartwright testified that he was unable, by reason of poverty, to comply with the order of the court for the payment of his indebtedness to the receivers , that he had no property of any sort or kind, but was willing to make over anything which he had ; that he had made application to be adjudicated a bankrupt; that all moneys withdrawn by him from the hands of the receivers were withdrawn by the advice of the late Judge Reed, one of his co-receivers ; that he had not put away or secreted the money, and poverty was his sole reason for not complying with the order; that an account of the charges on the books had been presented to him, and he did not question its correctness, but that he did not remember all the items, and had not supposed that he had drawn so much ; that he did not dispute any of the amounts ; that he had been applied to to repay them, and had notice of the orders of the court ; that he had used the money for personal expenses ; that he had a large family and needed it to live upon ; that he

supposed that he had a right to take the money, and that from what Judge Reed said, he supposed he should have $10,000 for his services ; that he had no intention to do wrong ; that of his indebtedness to the company, $1500 was secured by pledge of twenty-five shares of stock of the New England Coal Gas Condenser Association, of which he was president, which he believed to be adequate in value to the amount of the loan ; but that he had never known of any sales of the stock, and that it had no market value ; that the other receivers had taken $7450 each, January 13, 1872 ; that Judge Reed had said to him, ' If you draw too much, you will have to replace it,' and told him to keep within $10,000.

" No compensation for said Cartwright's services as receiver has ever been fixed or allowed by the court ; and I was of opinion that the amount of his said indebtedness largely exceeded the value of such services. The receivers have not yet completed the settlement of the affairs of said company, and have not filed an account.

" It appeared to the court upon such examination and hearing, that said Cartwright had disobeyed the said order of December 13, and that he had unlawfully appropriated to his own use, the sum of $10,573.44, withdrawn by him from the assets of the said company in the hands of the receivers thereof ; and the said Cartwright was thereupon adjudged to be in contempt ; and the matter being further postponed for sentence to the third day of January current, on said last mentioned day the said Cartwright appeared before the court in session, and was by me sentenced to be imprisoned in the common jail of the county of Suffolk for the term of six months, unless sooner discharged by further order of this court. The adjudication and sentence and the warrant of commitment are copied in the margin.* And the said Cartwright appealed to the full court."

---

* And now John W. Cartwright, one of the receivers of the said company having been notified to appear to show cause why an attachment should no issue against him as and for a contempt of this court, as well for the disobedience of an order made in this cause on the thirteenth day of December, 1873,

Cartwright's Case.

*C. R. Train*, Attorney General, for the Commonwealth.

*H. C. Hutchins & G. A. Somerby*, for Cartwright, argued that a contempt of court was a criminal offence, and that therefore Cartwright could not be punished unless a specific offence was

by the Honorable Charles Devens, Junior, one of the justices of this court, as for an unlawful appropriation of the assets of the said Hide & Leather Insurance Company to his own use, alleged in an affidavit of James C. Davis, one of the receivers of the said company, which was filed in this cause on the eighteenth day of December, 1873; and the said John W. Cartwright having appeared personally before this court on the twenty-third day of December, 1873, and having been examined before said court at said last mentioned date concerning the facts and circumstances alleged against him in said affidavit, and having been fully heard thereon; and it appearing to the court upon such examination and hearing that the said John W. Cartwright is guilty of the contempt alleged against him in the said affidavit, in that he has disobeyed the said order, and in that he has unlawfully appropriated to his own use the sum of ten thousand five hundred and seventy-three dollars and forty-four cents, withdrawn by him from the assets of the said company in the hands of the receivers thereof, without the direction of this court and without authority of law :

Now, on motion of the Attorney General, it is ordered that for his misconduct the said John W. Cartwright be committed to the common jail of the county of Suffolk aforesaid for the term of six months, unless he shall be sooner discharged by the further order of this court.

By the court, George C. Wilde, Clerk.

To the sheriff of our county of Suffolk, his deputies, and the keeper of our common jail in Boston in said county, Greeting.

Whereas, by the consideration of our Supreme Judicial Court, holden at Boston, within and for our said county of Suffolk, on the second Tuesday of September, eighteen hundred and seventy-three, John W. Cartwright, of said Boston, was adjudged to be guilty of contempt of our said court, for having disobeyed an order made in a cause pending in our said court by one of the justices thereof, and for having unlawfully appropriated to his own use a portion of the assets of the Hide & Leather Insurance Company, one of the parties to said cause, in the hands of the receivers appointed in said cause by our said court, the said John W. Cartwright being one of the said receivers; and on the fifty-ninth day of the session of our said court, being the third day of January in the year eighteen hundred and seventy-four, was sentenced for his said misconduct to suffer imprisonment in our said jail for the term of six months, unless he shall be sooner discharged by the further order of our said court :

distinctly charged against him, and an opportunity given him of answering it; that the information filed by the Attorney General contained no specific charges; that the affidavit of Davis charged an appropriation of money by Cartwright to his own use, and a non-compliance with the order directing him to pay it over to Davis; that neither of these things constituted a punishable contempt; that the sworn testimony of Cartwright was, in this proceeding, conclusive; that it thus appeared that the money was taken in pursuance of advice upon which he might well rely, in anticipation of compensation, and as he supposed rightfully; that this relieved him from any imputation of contempt in its misappropriation; and that his inability from poverty was a sufficient excuse in this proceeding for his failure to comply with the order to pay over to Davis.

GRAY, C. J. The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in Courts of Chancery and other Superior Courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of Magna Charta and of the twelfth article of our Declaration of Rights. 4 Bl. Com. 284–288. Acta Canc. 209, 264, 321, 373, 642, 753, 755. *The King* v. *Almon*, Wilmot, 243, 254. Clarke's Praxis, tit. 62. Mass. Col. Laws, (ed. 1672,) 36; Anc. Chart. 90. *Thwing* v. *Dennie*, Quincy, 338. 6 Dane Ab. 528. *United States* v. *Hudson*, 7 Cranch, 32, 34. There

---

We therefore command you, the said sheriff and deputies, forthwith to convey and deliver into the custody of the keeper of our said jail the body of the said John W. Cartwright.

And you, the keeper of our said jail, are hereby required to receive the body of the said John W. Cartwright, and cause him to be confined in our said jail for the full term of six months, unless he shall be thence sooner discharged by the further order of our said court.

And for so doing, this shall be your warrant. And you are to make a return of this warrant, with your doings thereon, to the office of the clerk of the said Supreme Judicial Court at Boston aforesaid.

Witness, HORACE GRAY, Esquire, chief justice of said court. Dated at Boston aforesaid the third day of January, in the year of our Lord eighteen hundred and seventy-four, and sealed with the seal of the said court.

                                        George C. Wilde, Clerk.

is ro class of cases in which the exercise of this power is more familiar or more necessary than in the case of attorneys and solicitors, clerks, sheriffs and other officers of courts. 2 Hawk. *c.* 22, §§ 4, 10, 11, 30. *United States* v. *Mann,* 2 Brock. 9. *In re Pitman,* 1 Curtis, 186. *Yates* v. *Lansing,* 9 Johns. 395, affirming *S. C.* 5 Johns. 282. *Chiles* v. *Harrison,* 1 Litt. 150. The appellant, having been appointed by this court, sitting in equity, the receiver of an insolvent insurance company, was an officer and representative of the court, and his custody of the funds thereby committed to his charge was the custody of the court. *Davis* v. *Gray,* 16 Wall. 203. *Hills* v. *Parker,* 111 Mass. 508.

An application for an attachment for contempt is to be made and filed in the original cause ; after the attachment has issued, the proceedings are distinct and are criminal in their nature. *Folger* v. *Hoogland,* 5 Johns. 235. *Ex parte Kearney,* 7 Wheat. 38. *Durant* v. *Supervisors,* 1 Woolworth, 377. *Winslow* v. *Nayson,* 113 Mass. 411. *McDermott* v. *Clary,* 107 Mass. 501. But the jurisdiction and power of the court do not depend upon the question whether the offence might or might not be punished by indictment. *Rex* v. *Ossulston,* 2 Stra. 1107 ; *S. C. nom. The King* v. *Pierson,* Andr. 310. *Spalding* v. *People,* 7 Hill, 301 ; *S. C.* 10 Paige, 284 ; 4 How. 21. *State* v. *Woodfin,* 5 Ired. 199. *State* v. *Williams,* 2 Speers, 26. " As regards the question whether a contempt has or has not been committed, it does not depend upon the intention of the party, but upon the act he has done." By Taney, C. J., in *Wartman* v. *Wartman,* Taney, 362, 370. In a court of chancery, at least, his oath is not conclusive in his favor, but may be contradicted by other evidence. Bac. Ab. Attachment, B. 4 Bl. Com. 288. *The King* v. *Vaughan,* 2 Doug. 516. *Emery* v. *Bowen,* 5 L. J. (N. S.) Ch. 349.

But in the present case his own testimony fails to clear him. It appears by his examination upon oath that at the time of his appointment as receiver he was indebted to the corporation in the sum of $1650.00, and that he afterwards took from the assets of the corporation in the hands of the receivers, and applied and spent for his own use, without any order or authority of the court,

the sum of $10,573.44; that nearly $9000 of this sum was so taken by him within two or three months of his appointment, that no entry of the greater part thereof was made on the books of the receivers until after the Attorney General had filed an application to remove him from office for gross negligence and malfeasance in his official duties, and that no part of these two sums, amounting with interest at six per cent. to $13,565.97, had ever been replaced. The appellant's statement that he had no intention to do wrong is irreconcilable with the rest of his testimony, and with his admission that he also appropriated, without the knowledge of his co-receivers, $25,000 in bonds of the United States, belonging to the corporation, and did not return them until after that misappropriation had been discovered by the Attorney General and a demand had been made upon him for them.

The taking and spending by this receiver for his own use, whether with or without the concurrence or advice of the other receivers, of more than $10,000 of the funds in his possession as an officer and representative of the court, was a gross breach of trust, tending to bring reproach, disgrace and distrust upon the administration of justice, and was a contempt of the authority of the court, and punishable, according to the law of the land and the established practice of all courts of similar jurisdiction, by fine or imprisonment at the discretion of the court. The object of an attachment and commitment for a gross contempt of this nature being not merely to compel restoration of the money illegally taken, but to punish the offender, the discretion of the court cannot be controlled by the fact of his not having the present means of repaying what he has abstracted.

The appellant had full and sufficient notice of the nature of the contempt with which he was charged, by the terms of the order to show cause why an attachment should not issue against him, and by the affidavit of one of the receivers upon which that order was founded. He was fully heard in person and by counsel in his defence. And his offence is clearly set forth in the decree adjudging him guilty of contempt and in the warrant of commitment issued thereon.

It is unnecessary to consider how far that decree is the subject of appeal; because, for the reasons above stated, we are of opinion that there is no error of law in the proceedings, and that upon the facts of the case the discretion of the court was wisely and justly exercised by sentencing him to imprisonment for six months unless sooner discharged by further order of the court.

*Decree affirmed.*